IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| SHARIF TARIQ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | **1 :11-CV-159 (WLS)** |
| | : | |
| BRUCE CHATMAN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## RECOMMENDATION

Plaintiff, who is proceeding *pro se,* brought the above-styled action pursuant to 42 U.S.C. § 1983 on October 28, 2011. (Doc. 1).  Presently pending in this action is Defendants= Motion to Dismiss, which was filed on February 17, 2012. (Doc. 16).  Plaintiff filed a response to Defendants' Motions to Dismiss on March 2, 2012.  (Doc. 20).

### Background

Plaintiff, who was incarcerated at Autry State Prison (AASP@) when he initiated this lawsuit, alleges that Defendants seized and destroyed his Noble Qu'ran.  (Doc. 1).  Specifically, Plaintiff states that Defendant James Jackson, a CERT Team Sergeant, confiscated Plaintiff's Noble Qu'ran when he arrived at ASP because it "is radical" and "has the wrong kind of stuff in it".  Plaintiff was taken to see Defendant Douglas Simmons, the ASP chaplain, and Defendant Simmons allegedly told Plaintiff that the "Noble Qu'ran teaches hate and that [Plaintiff] am not allowed to have it." Plaintiff maintains that Defendant Bruce Chatman, the Warden at ASP, denied Plaintiff's grievance, and stated that Plaintiff could send his Noble Qu'ran home or have it picked up at visitation. Plaintiff states that while his grievance was pending, his Noble Qu'ran was destroyed.  As a result,

Plaintiff alleges that Defendants violated his right to study his religion.

## Discussion

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to Araise a right to relief above the speculative level@ *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to Astate a claim to relief that is plausible on its face.@ A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal,* 129 S.Ct.1937,1949 (2009) (quoting *Twombly,* 550 U.S. at 556, 570).

A complaint must contain a Ashort and plain statement of the claim showing that the pleader is entitled to relief.@Fed. R. Civ. P. 8(a)(2). ASpecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.@ *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an Aunadorned, the-defendant-unlawfully-harmed-me accusation.@ *Iqbal,* 129 S.Ct. at 1949.

While the Court must accept all the allegations contained in the Complaint as true, the Court does not have to accept a Alegal conclusion couched as a factual allegation.@ *Id.* The key to proper consideration of a motion to dismiss after *Twombly* is plausibility, as the Awell-pled allegations must nudge the claim across the line from conceivable to plausible.@*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009). AThreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.@*Iqbal*, 129 S.Ct. at

1949. Thus,

> a court considering a motion to dismiss can choose to begin by
> identifying pleadings that, because they are no more than conclusions,
> are not entitled to the assumption of truth. While legal conclusions
> can provide the framework of a complaint, they must be supported by
> factual allegations. When there are well pleaded factual allegations, a
> court should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

*Id.* at 1950.

### *Defendant Chatman*

Plaintiff alleges that Defendant Chatman deprived Plaintiff of his rights by denying a grievance regarding the confiscation of Plaintiff's Noble Qu'ran.  (Doc. 1).  Plaintiff alleges that his Noble Qu'ran was destroyed while his grievance was still pending, but does not allege that Defendant Chatman destroyed Plaintiff's Noble Qu'ran.

"[F]iling a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied." *Owens v. Leavins,* 2006 WL 1313192, at *2 (N.D. Fla. May 12, 2006); *see also Nichols v. Burnside*, 2011 WL 2036709, *3 (M.D. Ga. April 21, 2011) (finding that a grievance and letter to a supervisor does not alone make the supervisor liable).  Thus, "[p]rison officials . . . whose only roles involved the denial of administrative grievances or the failure to act, are not liable under § 1983." *O'Connor v. Carnahan*, 2011 WL 1326446 *4 (N.D. Fla. Apr. 6, 2011) (citations omitted).

As the Complaint alleges only that Defendant Chatman denied Plaintiff's grievance, the undersigned recommends that Defendant Chatman be dismissed from this action.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("the court shall dismiss the case at any time if the court determines that" the action fails to state a claim for which relief may be granted).

*Free Exercise Clause*

In their Motion to Dismiss, Defendants assert that Plaintiff has failed to state a First Amendment claim. (Doc. 16).  Prisoners retain the First Amendment right to the free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights[.]"  *Id.*  "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives –including deterrence of crime, rehabilitation of prisoners, and institutional security."  *Id.*  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).

"To determine whether a prison policy is reasonable, a district court must determine (1) whether there is a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forth to justify the regulation; (2) whether, under the restriction imposed, a prisoner has alternative means for exercising the asserted constitutional right; (3) the impact that accommodating the asserted constitutional right will have on prison staff, inmates, and the allocation of prison resources; and (4) whether the regulation in question is an 'exaggerated response' to prison concerns."  *Boxer X v. Donald*, 169 Fed. Appx. 555, 559-560 (11th Cir. 2006) (quoting *Turner*, 482 U.S. at 89-91); *see also Hakim v. Hicks*, 223 F.3d 1244, 1247-48 (11th Cir. 2000).

In analyzing the four factors, the Court, at this time, based on the pleadings, cannot say that Plaintiff can prove no set of facts that would entitle him to relief.  First, the Complaint alleges that Defendants have confiscated and destroyed Plaintiff's Noble Qu'ran because Defendants claim it is

radical and contains messages of hate.  (Doc. 1).  Defendants assert in their Motion to Dismiss that the Noble Qu'ran was confiscated because the content threatens prison security.  (Doc. 16). Defendants have provided no evidence to show how the content of the Noble Qu'ran impacts the security of ASP.  At this time, the undersigned cannot find that Defendants have shown there is a "valid, rational connection" between denying Plaintiff the ability to read and possess the Noble Qu'ran and the safety of ASP.  While the Court recognizes that prison security is an important governmental interest, it is not clear that denying inmates the ability to possess the Noble Qu'ran is actually promoting the penological interest of institutional security.  There is simply no evidence before the Court regarding the content of the Noble Qu'ran at this stage of the proceedings.

Further, the Complaint does not contain any allegations that Plaintiff has alternative means for exercising his religion.  Defendants maintain that Plaintiff can still pray, read other books, attend religious services, and eat a diet that conforms to his religion. (Doc. 16).  The Complaint, however, does not allege that Plaintiff is still able to practice his religion, nor is there any admission in the Complaint that the alternative means of exercising his religion suggested by Defendants are actually available to Plaintiff.   For example, neither Plaintiff nor Defendants have alleged there are alternative means for Plaintiff to read the Noble Qu'ran, such as periodic access to the Noble Qu'ran, rather than personal possession.  Furthermore, in his Response, Plaintiff states that "the Quran is a significant factor in [Plaintiff's] practice of religion."  (Doc. 20, p. 2).  Thus, it appears Defendants' alleged actions could have denied Plaintiff the ability to exercise his religion without providing alternative means.

Defendants maintain that if ASP allowed all prisoners to have a copy of the Noble Qu'ran there would be a greater security risk because inmates could form "'affinity groups' to practice

their hateful ideology."   Defendants further assert that allowing Plaintiff to have the Noble Qu'ran presents financial concerns because ASP will have to hire additional prison guards.   The alleged impact of allowing Plaintiff to possess the Noble Qu'ran is speculative at this stage.  Finally, based on the Complaint, it appears at least possible the regulation is an "exaggerated response" to the alleged prison concerns.

Defendants have provided no evidence to show that the Noble Qu'ran is radical and promotes hateful ideology, or that confiscating Plaintiff's Noble Qu'ran is <u>reasonably</u> related to a penological interest.  Therefore, the undersigned finds that Plaintiff's Complaint sufficiently states a claim under the Free Exercise Clause of the First Amendment to withstand Defendants' Motion to Dismiss.

### Religious Land Use and Institutionalized Persons Act (RLUIPA)

Defendants maintain that, under the RLUIPA, Plaintiff cannot sue Defendants in their individual capacities or recover monetary damages.  (Doc. 16-1).  Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined in an institution, . . . unless the government demonstrates that imposition of the burden on that person - - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1.

It is unclear if Plaintiff is attempting to bring the RLUIPA claim against Defendants in their individual or official capacities.  To the extent that Plaintiff is attempting to bring the claims against Defendants in their individual capacities, these claims must fail.  The Eleventh Circuit has held that "section 3 of RLUIPA . . . cannot be construed as creating a private action against individual defendants for monetary damages."  *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007)

6

*abrogated on other grounds* by *Sossamon*, 131 S.Ct. 1651.  Thus, Plaintiff is not entitled to pursue

a claim against Defendants in their individual capacities under section 3 of RLUIPA.

Plaintiff is also seeking to recover $25,000 in compensatory damages and $10,000 in

punitive damages against each Defendant.  (Doc. 1).  The Supreme Court has held, however, that

the RLUIPA "does not include suits for damages against the State."  *Sossamon v. Texas*, 131 S.Ct.

1651, 1660 (2011).  Therefore, it is the recommendation of the undersigned that Plaintiff's claims

for monetary damages under RLUIPA, whether against Defendants in their individual or official

capacities, be dismissed, as well as any non-monetary claims under RLUIPA against Defendants in

their individual capacities.

### *Qualified Immunity*

Defendants also assert that they are entitled to the defense of qualified immunity, and thus,

the Complaint should be dismissed.  (Doc. 16).  Defendants "'are entitled to qualified immunity at

this stage in the proceedings if [Plaintiff's] complaint fails to allege a violation of a clearly

established constitutional right.'" *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1340

(11th Cir. 1998) (quoting *Williams v. Alabama State Univ.*, 102 F.3d 1179, 1182 (11th Cir.

1997)).

Qualified immunity "offers complete protection for government officials sued in their

individual capacities as long as their conduct violates no clearly established statutory or

constitutional rights of which a reasonable person would have known." *Oliver v.  Fiorino*, 586

F.3d 898, 904 (11th Cir. 2009).  "Under the qualified immunity standard recently rearticulated by

the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009), we are obliged to

grant qualified immunity to a [defendant] officer unless the plaintiff can demonstrate: first, that the

facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was clearly established at the time of the incident." *Id.* at 905.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.'"  *Hope v. Pelzer*, 122 S. Ct. 2508, 2515 (2002) (quoting *Anderson v. Creighton*, 107 S. Ct. 3043 (1987)).  "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . Accordingly, . . . the salient question . . . is whether the state of the law [at the time of the events giving rise to the cause of action] gave [the defendants] fair warning that their [actions were] unconstitutional."  *Id.* at 2516.

In the context of the defense of qualified immunity asserted on a 12(b)(6) motion to dismiss, there must be a failure by the plaintiff to set forth a clearly established constitutional violation in order for the protection of qualified immunity to attach.  The undersigned has determined that Plaintiff has sufficiently pled a claim against Defendants under the Free Exercise Clause of the First Amendment.  The Court notes that Plaintiff has failed to identify pre-existing law which holds the alleged activity to be a clear violation of Plaintiff's constitutional rights.  However, at the time of the alleged events, Plaintiff had a constitutional right to the free exercise of his religion, and Plaintiff states that "the Quran is a significant factor in [Plaintiff's] practice of religion[.]"  (Doc. 20).

"Qualified immunity is not appropriate at this stage because it was clearly established at the

8

time of the alleged violation that prison officials may not substantially burden inmates' right to the free exercise of religion without some legitimate penological justification." *Presley v. Edwards*, 2007 WL 174153, *12 (M.D. Ala. Jan. 19, 2008).  Therefore, it is the recommendation of the undersigned that Defendants' claim of qualified immunity be denied at this time.  Qualified immunity may be more appropriate at the summary judgment stage. *See Williams*, 102 F.3d at 1182.

### *Injunctive Relief*

Plaintiff has also sought injunctive relief in his complaint, requesting Defendants be "permanently restrained from confiscating, destroying, and denying plaintiff and other prisoners their Noble Qu'ran". (Doc. 1).

"To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest." *Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010).  The scope of the identified relief must also not exceed the identified claim. *Id.*  "The PLRA [Prison Litigation Reform Act] mandates that injunctive relief is only appropriate where it is 'narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least restrictive means necessary to correct the violation of the Federal right.'" *Id.* at 1318 (quoting 18 U.S.C. § 3626(a)(1)(A)).

To the extent that Plaintiff is seeking a permanent injunction to protect all future inmates from being denied a Noble Qu'ran, the undersigned finds that Plaintiff lacks standing.   "[A] litigant must assert his own legal rights and interests and may not ordinarily rely on the rights and interests

of third parties." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994).   Plaintiff is attempting to impermissibly "assert third party rights in federal court on behalf of inmates other than plaintiff." *Besselaar v. Siegelman*, 2001 WL 936196, *22 (S.D. Ala. May 2, 2001).   Furthermore, there does not appear to be any impediment which prohibits the "other prisoners" from asserting their own constitutional rights.  *See e.g. id.*  Plaintiff lacks standing with respect to his claim of injunctive relief for "other prisoners", and therefore, it is the recommendation of the undersigned that this claim be dismissed.

Defendants assert that Plaintiff's personal claim for injunctive relief must also be dismissed. (Doc. 16-1).  Defendants maintain that because Plaintiff has alleged that his Noble Qu'ran has already been destroyed, Plaintiff's claim for injunctive relief is moot because "nothing can be done for Plaintiff to prevent his Noble Qu'ran from being confiscated, destroyed, and denied."  The undersigned finds that Defendants have inappropriately narrowed Plaintiff's claim for injunctive relief.  It appears to the Court that Plaintiff may be requesting that Defendants be enjoined from confiscating, destroying, or denying Plaintiff a copy of the Noble Qu'ran.

As determined above, Plaintiff has sufficiently pled a First Amendment claim against Defendants.  Defendants assert in their Motion to Dismiss that denying Plaintiff access to his Noble Qu'ran is part of the prison policy.  (Doc. 16).  Thus, if Plaintiff is successful in his claim against Defendants it may be necessary to enjoin Defendants from enforcing a policy which violates Plaintiff's constitutional rights.  The undersigned finds that there are sufficient factual allegations to show that Plaintiff may be able to establish a violation of his constitutional rights.  Therefore, it is the recommendation of the undersigned that the Motion to Dismiss as to Plaintiff's personal claim

for injunctive relief be denied at this time.

## Conclusion

The undersigned finds that Plaintiff has failed to state a claim for which relief can be granted (1) as to the claim against Defendant Chatman, (2) as to the claim of monetary damages under RLUIPA, (3) as to the RLUIPA claim against Defendants in their individual capacities, and (4) as to the claim of injunctive relief for "other prisoners".  The undersigned finds that Plaintiff has sufficiently stated (1) a claim for monetary damages and equitable relief against Defendants Jackson and Simmons for a violation of his First Amendment rights, and (2) a claim against Defendants Jackson and Simmons for equitable relief, in their official capacities, under RLUIPA, and thus, the undersigned recommends that these two claims be allowed to proceed.

Accordingly, it is the recommendation of the undersigned that Defendants=Motion to Dismiss (Doc. 16) be **GRANTED-IN-PART AND DENIED-IN-PART**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 18th day of July, 2012.


s/ ***THOMAS Q. LANGSTAFF***

UNITED STATES MAGISTRATE JUDGE

llf

11