**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

**SHARIF TARIQ**,

Plaintiff,

**v.**

**BRUCE CHATMAN**, *et al.*,

Defendants.

CASE NO.: **1:11-CV-159 (WLS)**

**ORDER**

Before the Court is a Recommendation (Doc. 25) from United States Magistrate Judge Thomas Q. Langstaff, filed July 18, 2012. This Recommendation concerns the First Amendment claims and claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, Judge Langstaff recommended permitting to proceed in his November 22, 2011 Recommendation. (Doc. 7). Specifically, in the November 22, 2011 Recommendation, Judge Langstaff recommended that Plaintiff's Complaint be permitted to proceed as against Defendants Bruce Chatman, James Jackson, and Douglas T. Simmons. (*Id.* at 6).

Subsequent to the November 22, 2011 Order and Recommendation, but before this Court entered an order either adopting or declining to adopt Judge Langstaff's Recommendation, Defendants Chatman, Jackson and Simmons moved to dismiss Plaintiff's Complaint. (Doc. 16-1). On July 18, 2012, Judge Langstaff recommended that Defendants' Motion to Dismiss be granted-in-part on the following: 1) as to the claim against Defendant Chatman; 2) as to the claim of monetary damages under the RLUIPA;

3) as to the RLUIPA claim against Defendants in their individual capacities; and 4) as to the claim of injunctive relief for "other prisoners." (*See generally* Doc. 25). Judge Langstaff did find, however, that Plaintiff has sufficiently stated: 1) a claim for monetary damages and equitable relief against Defendants Jackson and Simmons for a violation of his First Amendment rights and 2) a claim against Defendants Jackson and Simmons for equitable relief, in their official capacities, under RLUIPA. (*Id.*) Thus, Judge Langstaff recommended that these two claims be allowed to proceed. (*Id.*)

On August 22, 2012, this Court entered an order accepting and adopting Judge Langstaff's November 22, 2011 Recommendation. (Doc. 30). For the following reasons, this Court **ACCEPTS** and **ADOPTS** Judge Langstaff's July 18, 2012 Recommendation as well.[1]

## I. Defendants' Objections

Defendants filed written objections to Judge Langstaff's July 18, 2012 Recommendation. (Doc. 26). Plaintiff did not, however, file a written objection to the July 18, 2012 Recommendation. (*See generally* Docket). In Defendants' Objection, Defendants disagree with Judge Langstaff's finding that Plaintiff sufficiently stated claims for violation of his First Amendment rights and rights under RLUIPA. (*See generally* Doc. 26). According to Defendants, they sufficiently met the test outlined in Turner v. Safley, 482 U.S. 78 (1987), for showing that they had a legitimate penological interest in confiscating Plaintiff's Noble Qu'ran. (Doc. 26 at 2-4). Per Defendants, they confiscated the Noble Qu'ran because "[a]llowing inmates to study materials that promote dissension is contrary to maintaining institutional security." (*Id.* at 3). Thus,

[1] As Plaintiff's concerns regarding Judge Langstaff's November 22, 2011 Recommendation were amply addressed in this Court's Order adopting said Recommendation, dated August 22, 2012, the undersigned limits the discussion in this Order to Defendants' Objections to Judge Langstaff's July 18, 2012 Recommendation.

Defendants state that:

> [A] neutral, 'valid, rational connection' exists between the confiscation of Plaintiff's Noble Qu'ran and 'the legitimate governmental interest[s]' of maintaining a safe and secure prison, while avoiding burdensome financial expenditures, thereby satisfying the first Turner factor.

(*Id*.)

Defendants then argue that Plaintiff failed to allege that he had no alternative means to exercise his religion absent his Qu'ran since he can still pray, read other religious books, attend religious services and exercise other means of religious practice. (*Id*. at 3-4). With regard to the third factor–the impact that the accommodation of the asserted constitutional right would have on guards and other inmates–Defendants argue that "allowing Plaintiff to possess a Noble Qu'ran would have an adverse impact on institutional security because hate would be promoted, which impacts prison security." (*Id*. at 4). Finally, as to the fourth factor-whether there exists a ready alternative "that fully accommodates the prisoner's rights at de minimis cost to valid penological interests"-Defendants argue that even if their decision to confiscate the Qu'ran is an "exaggerated response," this does not mean that the same is illegitimate. (*Id*.) Thus, Defendants argue that "the challenged regulation is reasonable and has the legitimate penological objectives of maintaining a safe and secure prison." (*Id*.)

As to the Judge Langstaff's conclusion that Defendants are not entitled to qualified immunity at this stage, Defendants disagree. (*Id*. at 5). They, in fact, believe that dismissal on qualified immunity grounds is nonetheless proper at this stage because they have committed no constitutional violation. (*Id*.) Additionally, Defendants argue that they should be entitled to qualified immunity because "there is no law clearly establishing a violation on the well-pled 'facts' asserted here." (*Id*.)

## II. Discussion

### A. Free Exercise Clause and the Turner Balancing Test

This Court finds it necessary to overrule Defendants' objections. First, with regard to whether the challenged "regulation," meets the Turner balancing test, this Court notes that there is no evidence from either Defendants' Motion to Dismiss or their Objection to the Magistrate's Report and Recommendation that there is an actual "regulation" at work here. Based on the facts alleged in Plaintiff's Complaint, his Noble Qu'ran was confiscated because prison officials stated that it is "radical," "teaches hate," and has "the wrong kind of stuff in it." (Doc. 1 at 5). However, Defendants have provided no actual evidence of a written regulation or policy governing inmates' right of access to religious texts. Defendants have simply stated that they should be allowed to regulate an inmate's right to possess certain religious texts on an *ad hoc* basis as long as they can articulate a "reasonable" basis for the confiscation. With this argument, this Court disagrees. [2]

In essence, Defendants argue that they are entitled to a dismissal of Plaintiff's claims because they contend that there was a "neutral" connection between the confiscation and the prison's interest in maintaining a safe and secure prison. However, at this stage, the Court cannot assess whether the regulation was indeed "neutral." A review of the pleadings does not indicate that there is any evidence regarding whether there exists a formal policy regarding certain kinds of religious text, how the policy is

[2] Though there is no need to make a finding as to the actual merits of Plaintiff's claim at this stage, at first blush, this Court finds that it is no doubt likely a violation of Plaintiff's constitutional rights to allow a prison official to decide on an *ad hoc*, unilateral basis, without any established procedure, policy or practice, whether an inmate should be permitted to possess a religious text. Such an *ad hoc*, unilateral determination without any reference to any objective criteria simply smacks of an arbitrary infringement of a fundamental constitutional right. Defendant has indicated no principle of law suggesting that a prisoner may be deprived of a religious text without limitation.

applied, and what religious texts, if any, are banned for all inmates.

In Turner, the Supreme Court stated that in assessing whether a regulation meets the first factor of the balancing test, "the governmental objective must be a legitimate and neutral one." 482 U.S. at 90. Thus, the Supreme Court noted that courts should "inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression." *Id.* In their Motion to Dismiss, Defendants simply argue that a confiscation of a religious text on the grounds that certain identified prison officials find it 1) to be "radical"; 2) to have "the wrong kind of stuff in it"; and 3) to teach hate, comports with Turner's requirement of "neutrality." (Doc. 16-1 at 5-6). However, Supreme Court precedent indicates that it is exactly this kind of "censorship" that is "decidedly not 'neutral.'" *See* Thornburgh v. Abbott, 490 U.S. 401, 416 (1989) (noting that regulations barring writings that express "inflammatory political, racial, religious, or other views" or are "otherwise inappropriate," are exactly the kind of regulations that "fairly invite[] prison officials and employees to apply their own personal prejudices and opinions as standards for prisoner mail censorship") (citing Procunier v. Martinez, 416 U.S. 396, 415 (1974), *rev'd on other grounds*, Thornburgh, 490 U.S. 401)).[3] Therefore, construing the complaint in favor of Plaintiff, it cannot be said that Plaintiff has failed to "state a claim to relief" that is "plausible" based on the face of his Complaint. *See* American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1289 (11th Cir. 2010) ("[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

---

[3] While this Court recognizes that both Thornburg and Martinez concern regulations applying to prisoner mail, these cases are cited for the general proposition that "neutrality" requires that the prison officials' actions be related to the effect the publication may have on, i.e., security, and not on the content of the expression.

544, 570 (2007))).

Consequently, in addition to agreeing with Judge Langstaff's finding that Defendants have not provided any evidence that denying an inmate the right to possess a Noble Qu'ran actually promotes the penological interest of institutional security, this Court finds that Defendants have failed to show the neutrality of the "regulation" at issue at this stage of the litigation. In short, Defendants argue a "purpose" without pointing to any actual "policy" or "regulation."

Furthermore, Defendants offered nothing to respond to Judge Langstaff's concern that there is no evidence before the Court to determine whether allowing prisoners to retain their Noble Qu'ran actually does threaten the safety of the prison. Defendants simply reiterated their bald assertion and conclusion 1) that a Noble Qu'ran is a religious text that promotes dissension that is contrary to maintaining institutional security and 2) that if officials confiscate a Noble Qu'ran, this will further the governmental interest of maintaining a safe and secure prison. (Doc. 26 at 3). This is tantamount to arguing: "because I said that it is so, this makes it so." Though the Turner standard is a deferential one, this does not mean that this Court is required to blindly accept Defendants' conclusions asserting that the chosen action passes constitutional muster. Williams v. Pryor, 240 F.3d 944, 950 (11th Cir. 2001) ("Although similar in part (and sometimes in description) to ordinary rational basis review, the *Turner* standard requires a more searching, four-part inquiry" [based upon facts; not a defendant's self-serving conclusions offered in support of a motion for dismissal on the pleadings]."); Fortner v. Thomas, 983 F.2d 1024, 1029 (11th Cir. 1993) ("[E]ven though this court engages in a deferential review of the administrative decisions of prison authorities, the traditional deference does not mean that courts have abdicated their

duty to protect those constitutional rights that a prisoner retains.") (additional citations omitted).

With regard to Defendants' objections under the remaining Turner factors, this Court finds that Defendants' arguments fail to address Judge Langstaff's concerns and, are as such, overruled as well. Judge Langstaff concluded that, as to the second factor, Plaintiff has asserted that the Qu'ran is a "significant" factor in the practice of his religion. (Doc. 25 at 5). Therefore, this case turns on Plaintiff's right to retain access to a primary text necessary for the practice and exercise of his religious rights. Nevertheless, Defendants cite O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), for the proposition that because Plaintiff can engage in other religious observances, he has not been deprived of the right to practice his religion. However, O'Lone is distinguishable from the case at bar.

In O'Lone, the Supreme Court found reasonable a restriction on an inmate's ability to attend religious service, finding that inmates retained the right to participate in other Muslim religious ceremonies. *Id.* at 351-52. On the contrary, here, the focus would be on whether there exists a reasonable alternative for Plaintiff to practice religious observance through the use of a primary text utilized by members of the Muslim community. The statements-Plaintiff can "read other religious books" and is merely being deprived of "one religious book"-leave questionable whether any serious consideration was given to the textual alternatives available to Plaintiff in the practice of his Islamic faith. However, all of this is speculative because there are no actual developed facts. Nevertheless, it is apparent that the Supreme Court reviewed more

than the initial pleadings.[4]

In that same vein, the Court agrees that Defendants have not provided any actual evidence to support their speculative assertion that allowing one inmate to possess a Noble Qu'ran could lead to heightened security and financial concerns. Defendants argue that allowing an inmate to possess a Noble Qu'ran may lead other inmates to follow suit, "thereby resulting in greater security concerns of inmates forming 'affinity groups' to practice their hateful ideology.'" Thus, per Defendants, the prison would have to hire additional prison guards to ensure that these "affinity groups" were not in fact established. (Doc. 16-1 at 7). Judge Langstaff found this assertion to be "speculative at this stage." (Doc. 25 at 6). This Court concurs. Defendants are challenging Plaintiff's Complaint, not because it is inadequate on its face, but upon conclusions and speculation wholly unsupported by a developed record.

Even so, in O'Lone, respondents suggested several accommodations, which included placing all Muslim inmates on the same work detail or providing weekend labor for Muslim inmates. 482 U.S. at 352. Thus, the Supreme Court found reasonable the prison administrator's concerns that *physically* placing all Muslim inmates together could result in the creation of an organizational structure that could challenge "institutional authority." *Id.* at 353. In contrast, though they cite O'Lone as being support for their actions, Defendants have provided no evidence that allowing Plaintiff to possess his primary religious text could reasonably lead to the same, or even remotely

[4] Indeed, in most, if not all, of the cases cited by Defendants in support of their actions, evidence was adduced at a trial or during a hearing to aid the courts in their constitutional determination. *E.g.*, Turner, 482 U.S. 78 (trial); O'Lone, 482 U.S. 348 (hearing); McCorkle v. Johnson, 881 F.2d 993 (11th Cir. 1989) (evidentiary hearing). Therefore, by putting at issue unsubstantiated factual arguments as a defense to the alleged constitutional violation, Defendants' are essentially admitting that, at a minimum, a further hearing, or development of the facts, is necessary.

similar, result.[5] Accordingly, this Court agrees that Plaintiff has sufficiently stated a claim under the Free Exercise Clause of the First Amendment and that dismissal is therefore not proper.

**B. Qualified Immunity**

Regarding the defense of qualified immunity, Judge Langstaff found that Plaintiff's Complaint, as pled, does "allege a violation of a clearly established constitutional right," construed as a right to exercise his religion. (*See* Doc. 25 at 8) (citing Presley v. Edwards, No. 2:04-cv-729, 2007 WL 174153, at *12 (M.D. Ala. Jan. 19, 2007)). Thus, Judge Langstaff found that Defendants' qualified immunity defense cannot be sustained on the pleadings alone at this stage. Defendants objected to this finding by relying on their principal argument that they committed no constitutional violation. (Doc. 26 at 5). Nevertheless, per Defendants, even if there was a constitutional violation, Plaintiff cannot show that the constitutional right was clearly established at the time of the alleged violation. (Doc. 16-1 at 14; Doc. 26 at 5).

The Court agrees with Judge Langstaff and finds that Plaintiff has pled sufficient facts to show that a finding of qualified immunity is not warranted at this stage. First, the cases that Defendants point to in support of the argument that they have committed no constitutional violation only serve to support the general proposition that prison officials are permitted to infringe on a prisoner's constitutional right to practice his religion when it is "reasonably related to legitimate penological interests" and when the remaining Turner factors are met. *E.g.*, Turner, 482 U.S. 78; O'Lone, 482 U.S. 342.

[5] It must be noted that this Court does not purport to say that Defendants should be charged with the task of "disprov[ing] the availability of alternatives" for accommodating Plaintiff's right to practice his religion. *See* O'Lone v. Estate of Shabazz, 482 U.S. 342, 353 (1987). However, based on the current record, it does not appear that Defendants have made any attempt to offer a reasonable accommodation to Plaintiff that does not sacrifice "valid legitimate penological interests."

Quite the reverse, as applied to this case, these cases establish that Plaintiff might be able to show that the law *was* clearly established that Defendants were not permitted to interfere with his right to exercise his religion in the manner in which they so did.

Defendants were likely aware of the broad principle that they "may not substantially burden inmates' right to the free exercise of religion without some legitimate penological justification." (Doc. 25 at 9) (quoting Presley v. Edwards, No. 2:04-cv-729, 2007 WL 174153, at *12 (M.D. Ala. Jan. 19, 2008)). The Eleventh Circuit has concluded that "broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002). Thus, the cases cited by Defendants in no way show that in this particular case, Defendants have met their burden of demonstrating that "there is no law clearly establishing a violation on the well-pled 'facts' asserted here" (*see* Doc. 26 at 5).

Furthermore, as observed by the Supreme Court, RLUIPA was enacted by Congress to put government officials on notice that they cannot burden an inmate's right to practice his/her religion arbitrarily or without cause. *See* Cutter v. Wilkinson, 544 U.S. 709, 716 (2005) (noting that before Congress enacted RLUIPA to impose restrictions on a federally funded program's right to impose a "substantial burden on religious exercise, . . . Congress documented, in hearings spanning three years, that 'frivolous or arbitrary' barriers impeded institutionalized persons' religious exercise"). Here, as noted previously, Defendants have provided no evidence that the actions taken were consistent with a formal policy, if any, instituted by the prison. Even if Defendants would like to argue that they were not put on notice that they could not confiscate a Noble Qu'ran, it would be disingenuous for them to argue that they were not on notice

that any infringement of an inmate's right to practice his religion must be done in some neutral fashion, i.e., consistent with an objective policy.

Moreover, Plaintiff has alleged in his Complaint that his Noble Qu'ran was taken because Defendant Jackson stated that it is "radical" and "has the wrong kind of stuff in it" and Defendant Simmons stated that it "teaches hate." (Doc. 1 at 5). By failing to cite to an objective policy in place, or provide any actual evidence of one in a responsive pleading, Defendants have failed to demonstrate that they were "acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *See* Vinyard, 311 F.3d at 1346 ("To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.") (additional citations and quotations omitted). Therefore, this Court has no evidence to determine whether these statements were made in the scope of Defendants' authority or based on their own personal views. Stated another way, because at this stage the Court has no information to ascertain whether the action taken can even be measured against any formal policy, this Court is unable to determine whether officials were aware that they were knowingly violating prison policy, let alone whether Defendants knew that they were violating a constitutional right.

Accordingly, this Court adopts Judge Langstaff's findings on Defendants' qualified immunity defense.

## III. Conclusion

This Court has fully reviewed and considered the record. Despite Defendants' arguments to the contrary, there are a number of questions of fact that cannot be resolved on the as yet to be developed record. *See* La Grasta v. First Union Securities, Inc., 358 F.3d 840, 848 (11th Cir. 2004) ("question of fact . . . is often inappropriate for

resolution on a motion to dismiss under Rule 12(b)(6)") (additional citations omitted); MTM Television Distribution Grp., Ltd. v. Public Interest Corp., No. 91-1519-CIV-T, 1992 WL 80625, at *1 (M.D. Fla. Mar. 24, 1992) ("Questions of fact are not properly determined on a 12(b)(6) motion to dismiss.") Therefore, Defendants' unsubstantiated factual arguments have failed to demonstrate the insufficiency of Plaintiff's Complaint. *See* La Grasta, 358 F.3d at 845 (noting that in analyzing the sufficiency of a complaint, courts should limit their consideration to the well-pleaded factual allegations). Accordingly, this Court agrees that dismissal is not appropriate when viewing the Complaint in the light most favorable to Plaintiff.

Therefore, having found that Defendants' specific objections to the Magistrate's findings are untenable at this stage, and neither Defendants nor Plaintiff having objected to the remaining findings in the Magistrate's July 18, 2012 Recommendation (Doc. 25), this Court finds that said Recommendation should be, and hereby is, **ACCEPTED, ADOPTED** and made the Order of this Court, to the extent the same is consistent with this Order, for reason of the findings made and conclusions stated therein together with the findings made, reasons stated and conclusions reached herein. Accordingly, Defendants' Objections (Doc. 26) are **OVERRULED**. Defendants' Motion to Dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART without prejudice.** For that reason, Plaintiff's following claims are dismissed: (1) as to the claim against Defendant Chatman; (2) as to the claim of monetary damages under RLUIPA; (3) as to the RLUIPA claim against Defendants in their individual capacities; and (4) as to the claim of injunctive relief for "other prisoners." Plaintiff's claims for (1) monetary damages and equitable relief against Defendants Jackson and Simmons under the First Amendment and (2) his claims against Defendants Jackson and Simmons for equitable

relief, in their official capacities, under RLUIPA, are permitted to proceed.

**SO ORDERED**, this 22nd day of August, 2012.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**